# GLOBAL SETTLEMENT AGREEMENT

This Global Settlement Agreement ("**Agreement**") is made and entered into by and between **(1)** the *Norman, et al.* Plaintiffs (as defined below), **(2)** plaintiff Alexis Brown ("**Brown**"), and **(3)** Independent Case Management, Inc. ("**Defendant**") and its past and present affiliates, predecessors, successors, sister and parent entities and assigns, and all past and present owners, shareholders, board members, executives, directors, officers, administrators, managers, insurance companies, agents, staff, attorneys, employees, as well as any individual (past or present) that could be included within the definition of "employer" under either the Fair Labor Standards Act (FLSA) or the Arkansas Minimum Wage Act (AMWA), including but not limited to all individual owners, shareholders, executives, officers, directors and managers of Defendant in their personal capacities (all in item (3) collectively referred to as the "**Released Parties**") (all collectively referred to as the "**Parties**" or individually referred to as a "**Party**").

*Whereas*, Mari-Lou Ashley, Rebecca Baker, Starletta Biggs, Thomas Booth, Kyle Borders, Alexis Brown, Lois Callaway, Ashley Carter, Brandy Davis-Jackson, Ronald Epps, Jessica Farris, Donna Garden, Tonya Hargan, Terry Hayhurst, Helen Hogan, Helen Hollingsworth, Stan Julich, Pauline Lewis, Tina Marks, Roxanna Mendoza, Brittney Metz, Christy Milburn-Smith, Keanna Miller, Lorrie Mitchell, Carletta Morris, Karla Mount, Maranda Negrete, Raniesha Parker, Cortney Pense, Davon Polk, Travon Polk, Ron Pullease, Kayli Rocket, Emma Ross, Jacqueline Singleton, Kimberly Smith, Ora Smith, Georgann Smith, Joyce Sproles, Bethany Stewart, Sylvia Stockstill, Tasia Strong, Veronica Tucker, Alex Turner, Amy Walker, Louis Washausen, Devin Washausen, Julie Weaver, Keyia Wyatt (collectively, "**Settling Plaintiffs**") were members of a collective action that originally was filed by Bonnie Norman against Defendant in the United States District Court for the Eastern District of Arkansas ("**the *Norman* Court**"), styled *Bonnie Norman, Individually and on Behalf of All Others Similarly Situated v. Independent Case Management, Inc.*, Case No. 4:20-cv-00492-DPM ("**the *Norman, et al.* Collective**"), each asserting individual claims under the FLSA and the AMWA. On May 23, 2022, the Court entered an Order in the *Norman, et al.* Collective granting Defendant's motion for decertification and Defendant's motion for summary judgment dismissing the named plaintiff's claims with prejudice;

*Whereas*, on or about June 1, 2022, Brown, who was a member of the *Norman, et al.* collective filed a civil action against Defendant in the United States District Court for the Eastern District of Arkansas ("**the *Brown* Court**"), styled *Alexis Brown v. Independent Case Management, Inc.*, Case No. 4:22-cv-00502-DPM ("**the *Brown* Action**"), asserting individual claims under the FLSA and the AMWA;

*Whereas*, on September 15, 2022, counsel for the *Norman, et al.* Collective and counsel for Defendant (on behalf of their clients) entered into a Tolling Agreement

agreeing to toll the limitations period applicable to putative plaintiffs (including Alexis Brown) who had asserted claims against Defendant in the *Norman, et al.* Collective. The Tolling Agreement will end on the date the Court approves the Agreement or settlement payments are disbursed for the *Norman, et al.* Collective to counsel, whichever is earlier;

*Whereas*, in order to avoid the expense and burden of further litigation, the Parties negotiated in good faith a Global Settlement of the claims of the Settling Plaintiffs and the *Brown* Action at a settlement conference with the Honorable Benecia B. Moore in Little Rock, Arkansas on December 12, 2023;

*Whereas*, Defendant denies that it has committed any wrongdoing or violated any state or federal law pertaining to payment of wages or hours of work and have answered and intended to vigorously defend the federal and state law claims asserted in the *Brown* Action and that could have been asserted by the Settling Plaintiffs; and

*Whereas*, the Parties stipulate that this Agreement is a final, fair, and reasonable resolution of a *bona fide* dispute as to both liability in general and the amount of total compensation (whether wages or liquidated damages) that might be due any individual plaintiff.

*Therefore*, in consideration of the mutual covenants and promises set forth below, the Parties enter into this Agreement as follows:

1. **No Admission of Liability.**

Nothing contained in this Agreement is to be construed as an admission of any liability, culpability, negligence, or wrongdoing on the part of Defendant or any Released Party. Each of the Parties to the Agreement has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

2. **Eligible Plaintiff**.

   (a) An "**Eligible Plaintiff**" means the Settling Plaintiffs who recorded overtime hours while employed by Defendant during the time periods covered by the *Norman, et al.* Collective. All Eligible Plaintiffs and the amounts to be paid to each (1 hour or 7.485 hours per overtime pay period) are identified in Exhibit A to this Agreement.

   (b) A "**Redeeming Plaintiff**" means any Eligible Plaintiff who timely submits to Sanford Law Firm, PLLC ("**Plaintiffs' Counsel**") a completed Individual Settlement Agreement and Release ("**Individual Release**") under the settlement notice

      procedures set forth in Paragraph 4. Copies of the form Individual Releases (1 hour or 7.485 hours per overtime pay period) are attached to this Agreement as Exhibit B.

**3.   Settlement Payment.**

In consideration for settlement and the release of claims referenced herein on the terms and conditions set forth in this Agreement, Defendant agrees to pay the settlement as follows:

(a)   To each and every Redeeming Plaintiff, Defendant will pay the Settlement Amount listed alongside the Redeeming Plaintiff's name in Exhibit A to this Agreement. If all Eligible Plaintiffs timely submit completed Individual Releases, Defendant's Settlement Amount payments to Redeeming Plaintiffs will total $63,538.70. Payments to Redeeming Plaintiffs shall be made directly by Defendant and will be issued as wage income subject to standard withholdings consistent with the completed IRS W-4 tax form to be submitted to Defendant by each Eligible Plaintiff, in accordance with Defendant's usual and customary business payroll processing procedures and tax reporting for employer wage payments by IRS Form W-2. Any Eligible Plaintiff who does not timely submit a completed Individual Release or the required IRS W-4 tax form will not be paid his or her Settlement Amount listed in Exhibit A.

(b)   The payment of attorneys' fees and costs to be paid to Plaintiffs' Counsel will be negotiated separately and without regard to the payments to be paid by Defendant to Eligible Plaintiffs. If an agreement on attorneys' fees and costs cannot be reached, Plaintiffs' Counsel will file a motion for attorneys' fees and costs with the Court within thirty (30) calendar days of the date the Court approves this Agreement or settlement payments are disbursed for the *Norman, et al.* Collective to counsel, whichever is earlier. Defendant agrees to not object to the motion for attorneys' fees and costs on the basis that Eligible Plaintiffs are not prevailing parties under the FLSA or AMWA, but reserves the right to dispute the fees and costs claimed by Plaintiffs' Counsel as being reasonable, necessary, or appropriate. In the event that the Parties do reach an agreement and resolve the issue of attorneys' fees and costs, they will not seek Court approval of the agreed-upon fees and costs. Regardless of how attorneys' fees and costs are determined, Plaintiffs' Counsel must provide to Defendant a completed IRS Form W-9. Once the attorneys' fees and costs have been determined and Defendant has received all required documentation, Defendant will issue payment to Plaintiffs' Counsel within 45 days. Defendant will report any payment to Plaintiffs' Counsel using an IRS Form 1099.

4. **Complaint Amendment, Settlement Notice, and Payment Procedures.**

(a) Plaintiffs' Counsel shall file a motion for leave to amend the complaint and an amended complaint in the *Brown* Action to add each of the Eligible Plaintiffs as a party asserting their individual claims under the FLSA and the AMWA for purposes of settlement only.

(b) Plaintiffs' Counsel shall administer and bear the cost of and perform all necessary services relating to notice, including without limitation dissemination of the Individual Release to Eligible Plaintiffs and responding to Eligible Plaintiffs' inquiries. Defendant's Counsel shall administer and bear the cost of distribution of settlement payments.

(c) Plaintiffs' Counsel's responsibilities include: distributing an Individual Release and W-4 form to Eligible Plaintiffs, using their client contact information on file, as updated by skip tracing and/or National Change of Address ("NCOA") validation; and receiving and forwarding completed Individual Releases and W-4 forms to Defendant's Counsel.

(d) Defendant's Counsel's responsibilities include: providing Plaintiffs' Counsel with the payment of attorneys' fees and costs and the settlement checks issued to Redeeming Plaintiffs, pursuant to the Agreement's terms and conditions; and processing any requested stop-payments on issued settlement checks and issuing replacement settlement checks within 7 business days of notification by Plaintiffs' Counsel of a timely request for issuance of a replacement check.

(e) The Parties will file a Notice of Settlement in the *Brown* Action detailing the settlement and asking the Court whether, in its view, approval of the settlement will be necessary within 1 business day of complete signature of this Agreement.

(f) Eligible Plaintiffs will have 30 days from the Court's ruling on the Notice of Settlement with the Court to submit to Plaintiffs' Counsel a completed Individual Release (the "**Redemption Period**").

(g) Within 5 days after the end of the Redemption Period, Plaintiffs' Counsel shall provide to Defendant's Counsel all completed Individual Releases submitted in response to these notice procedures.

(h) Within 21 days after the end of the Redemption Period or, if the Court determines that approval of this settlement will be necessary, within 21 days after the Court's approval of this Agreement, whichever is later, Defendant will deliver to Plaintiffs' Counsel the settlement checks made

        payable to the Redeeming Plaintiffs in the amounts shown on Exhibit A. The settlement checks should not be individually sealed.

(i)     Redeeming Plaintiffs shall have 90 calendar days from the date of issuance to negotiate their settlement checks. If a Redeeming Plaintiff's check is returned as undeliverable, lost, destroyed or otherwise unusable, the Redeeming Plaintiff may notify Defendant, through Plaintiffs' Counsel, within the 90-day period. Defendant will, upon verification that the original check has not been negotiated, request a stop-payment on the original check and issue a replacement settlement check (minus the $15.00 stop-payment fee) within 7 business days. The Redeeming Plaintiff shall have 60 days from the date of issuance to negotiate the replacement check.

(j)     If any Redeeming Plaintiffs do not negotiate their settlement checks within 90 calendar days of issuance (or within 60 days of issuance of a replacement check), and their checks are not returned, their checks will be void and stop-payments will be placed. If any replacement checks are again returned as undeliverable, lost, destroyed or otherwise unusable, the checks will be void and stop-payments will be placed. In such event, those Redeeming Plaintiffs will be deemed to have waived irrevocably any right in or claim to a settlement share, but their Individual Release nevertheless will be binding upon them.

**5. Release of Claims.**

On the date each Redeeming Plaintiff signs his or her Individual Release, each Redeeming Plaintiff fully releases and discharges Defendant and the Released Parties from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature, whether known or unknown, that were alleged or that reasonably arise out of the acts alleged in the *Norman, et al.* Collective or the *Brown* Action, which includes all minimum wage and overtime-related claims under the FLSA and the AMWA, and including associated liquidated damages, interest, and penalty claims that were asserted or could have been asserted under state or federal law in the *Norman, et al.* Collective or the *Brown* Action prior to the execution date of a Redeeming Plaintiff's Individual Release ("**Released Claims**"). The Released Claims include all wage and hour claims under the FLSA and the AMWA, all claims under state wage payment and collection laws, and all claims under state common law for unjust enrichment and breach of contract. Redeeming Plaintiffs do not release any claim wholly unrelated to the wage and hour subject matter, specifically including those covered by workers' compensation, unemployment compensation or discrimination law, or any other claims that cannot be released by law. The Released

Claims include any claims derivative of wage claims being released, for the period through the execution date of a Redeeming Plaintiff's Individual Release.

The claims of any Eligible Plaintiff who does not timely submit a completed Individual Release under the settlement notice procedures set forth in Paragraph 4 will be dismissed without prejudice. The Parties agree to file with the *Brown* Court a Joint Stipulation of Dismissal Without Prejudice, in a form substantially similar to that attached as Exhibit C.

**6.    Mutual Full Cooperation if Court Approval Required and Potential Voiding of the Agreement.**

If the *Brown* Court seeks to approve this Agreement upon the filing of the Notice of Settlement or at any other time during the Settlement Administration period, the Parties agree to cooperate and take all steps necessary and appropriate to move for an order fully, finally, and unconditionally granting approval of the settlement ("**Approval Order**"), and otherwise effectuate all aspects of this Agreement.

(a) The Parties agree that they will jointly move for an Approval Order incorporating the terms of this Agreement as the Parties' stipulated Judgment, and retaining jurisdiction over its enforcement.

(b) If needed, Plaintiffs' Counsel agrees to apply to the *Brown* Court for payment of their attorneys' fees as a part of a joint motion for approval of settlement, as set forth in Paragraph 3(b). The enforceability of this Agreement is not contingent on the amount of attorneys' fees or costs awarded. Without limiting the generality of the foregoing, any dispute regarding the amount of attorneys' fees or costs, and/or any appeal related thereto, shall not affect or delay the finality of this Agreement, and shall not affect or delay the entry of a Final Order or Judgment in the Action.

(c) The Parties agree that, if the *Brown* Court does not grant approval of the settlement for any reason other than the amount of the attorneys' fee award, the Parties must attempt, within 14 days of the communication of rejection, to revise the terms of the settlement in a way that is mutually agreeable to the Parties and will be accepted by the subject Court.

(d) A failure of the *Brown* Court to approve any material condition of this Agreement which effects a fundamental change of the Parties' Agreement shall render the entire Agreement voidable and unenforceable as to all Parties herein at the option of the Party adversely affected thereby. However, neither Party may void the

    Agreement based on either Court's approval or non-approval of the amount of attorneys' fees or costs.

(e) If this Agreement is voided under <u>Paragraph 6(d)</u>, this Agreement shall have no force or effect; all negotiations, statements and proceedings related thereto shall be without prejudice to the rights of any Party, all of whom shall be restored to their respective positions in the lawsuit prior to the settlement; and neither this Agreement nor any ancillary documents, actions or filings the Parties agreed to shall be admissible or offered into evidence in the lawsuit or any other action for any purpose.

(f) The Tolling Agreement will end on the date the Court approves the Agreement or settlement payments are disbursed for the *Norman, et al.* Collective to counsel, whichever is earlier.

**7.** **<u>Parties' Authority</u>.**

The signatories hereby represent that they are fully authorized to enter into this Agreement and bind the Parties to the terms and conditions of the Agreement.

**8.** **<u>Enforcement Actions</u>.**

This Agreement is fully enforceable in the U.S. District Court for the Eastern District of Arkansas before the Honorable D.P. Marshall Jr. (or such judge as may be designated in his stead by the procedures of the Court), who shall retain jurisdiction over the *Brown* Action to enforce this Agreement.

**9.** **<u>Notices</u>.**

Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder by the Parties to this Agreement shall be in writing and shall be addressed as follows:

  To Eligible Plaintiffs:

  Josh Sanford
  Sanford Law Firm, PLLC
  Kirkpatrick Plaza
  10800 Financial Centre Parkway, Suite 510
  Little Rock, Arkansas 72211
  Tel: 501-221-0088 Fax: 888-787-2040
  *josh@sanfordlawfirm.com*

  To Defendant:

Regina A. Young
Stuart Jackson
Wright, Lindsey & Jennings LLP
200 West Capitol, Suite 2300
Little Rock, Arkansas 72201
Tel: 501-371-0808 Fax: 501-376-9442
ryoung@wlj.com
sjackson@wlj.com

10. **Construction.**

The Parties hereto agree that the terms and conditions of this Agreement are the result of lengthy, intensive, arm's length negotiations between the Parties and that the Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his/her or its Counsel participated in the drafting of this Agreement. This Agreement shall be construed in accordance with the substantive laws of Arkansas without regard to conflicts of law principles.

11. **Captions and Interpretations.**

Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Agreement or any provision hereof. Each term of this Agreement is contractual and not merely a recital.

12. **Modification.**

This Agreement may not be changed, altered, or modified except in writing and signed by the Parties hereto, and approved by the *Brown* Court. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

13. **Integration Clause.**

This Agreement constitutes the entire agreement between the Parties relating to the settlement and transaction contemplated hereby other than the Individual Releases signed by each Redeeming Plaintiff, and all prior or contemporaneous agreements, understandings, representations and statements, whether oral or written and whether by a Party or such Party's Counsel, agreed to by the Parties in this matter, are merged herein. No rights hereunder may be waived except in writing.

14. **No Prior Assignments.**

This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators and successors. The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

## 15. Counterparts.

This Agreement may be executed electronically and in counterparts. When each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties. Signatures sent by facsimile machine or scanned signatures in Portable Document Format sent by email shall be deemed original signatures.

**Please read carefully.**
**This Agreement includes a waiver and release of claims.**

[*Remainder of page left blank intentionally; signature page to follow*]

_/s/ AlexB_
_____
ALEXIS BROWN, Individually and on
Behalf of the Eligible Plaintiffs

Date: 02 / 15 / 2024
_____

INDEPENDENT CASE MANAGEMENT, INC.

By: _____

Title: _____

Date: _____

APPROVED AS TO FORM BY
COUNSEL FOR THE PARTIES:

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Ste 510
Little Rock, Arkansas 72211
Tel: 501-221-0088
Fax: 888-787-2040

By: _____
    Josh Sanford
    Ark. Bar No. 2001037
    *josh@sanfordlawfirm.com*

*Attorney for the Settling Plaintiffs
and Alexis Brown*

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, AR  72201-3699
(501) 371-0808
Fax: (501) 376-9442
Email: *wjackson@wlj.com;
ryoung@wlj.com; dljones@wlj.com*

By: _____
    William Stuart Jackson (92189)
    Regina A. Young (96161)
    Daveante Jones (2016163)

*Attorneys for Defendant*

# EXHIBIT A

# ELIGIBLE PLAINTIFFS

Doc ID: 8204a663d5d736d4a6e4bf40a3c54439c487838f

Exhibit A - Eligible Plaintiffs and Allocation

| Name | Allocation |
|---|---|
| Ashley, Mari-Lou | $874.50 |
| Baker, Rebecca | $2,593.55 |
| Biggs, Starletta | $429.00 |
| Booth, Thomas | $2,964.06 |
| Borders, Kyle | $864.52 |
| Brown, Alexis | $2,840.56 |
| Callaway, Lois | $231.00 |
| Carter, Ashley | $1,605.53 |
| Davis, Brandy | $5,557.60 |
| Epps, Ronald | $247.00 |
| Farris, Jessica | $494.00 |
| Garden, Donna | $123.50 |
| Hargan, Tonya | $370.50 |
| Hayhurst, Terry | $49.50 |
| Hogan, Helen | $1,976.04 |
| Hollingsworth, Helen | $3,087.56 |
| Julich, Stan | $891.00 |
| Lewis, Pauline | $132.00 |
| Marks, Tina | $3,952.08 |
| Mendoza, Roxanna | $123.50 |
| Metz, Brittney | $247.01 |
| Milburn-Smith, Christy | $1,729.04 |
| Miller, Keanna | $3,581.57 |
| Mitchell, Lorrie | $123.50 |
| Morris, Carletta | $528.00 |
| Mount, Karla | $561.00 |
| Negrete, Maranda | $1,235.03 |
| Parker, Raniesha | $123.50 |
| Pense, Cortney | $247.01 |
| Polk, Davon | $864.52 |
| Polk, Travon | $494.01 |
| Pullease, Ron | $330.00 |
| Rockett, Kayli | $370.51 |
| Ross, Emma | $66.00 |

| | |
|---|---:|
| Singleton, Jacqueline | $247.01 |
| Smith, Georgann | $33.00 |
| Smith, Kimberly | $864.52 |
| Smith, Ora | $313.50 |
| Sproles, Joyce | $66.00 |
| Stewart, Bethany | $1,852.54 |
| Stockstill, Sylvia | $1,358.53 |
| Strong, Tasia | $1,235.03 |
| Tucker, Veronica | $617.51 |
| Turner, Alex | $247.01 |
| Walker, Amy | $6,175.13 |
| Washausen, Devin | $3,581.57 |
| Washausen, Louis | $6,669.14 |
| Weaver, Julie | $123.50 |
| Wyatt, Keyia | $247.01 |
| **Total** | $63,538.70 |